UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) CRIMINAL NO.   19 CR 10119-DJC |
| v. | ) |
| LARRY BROWN, JR,<br>    Defendant. | ) |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States submits this memorandum in support of its recommendation that the Defendant, Larry Brown, Jr. (Brown) be sentenced to sentence of 27 months, two years of supervised release of two years, restitution and forfeiture in the amount of $10,425.95, and a fine within the guideline range of $15,000 to $55,000, unless the Court finds that Defendant is not able, and is not likely to become able, to pay a fine.

### SUMMARY OF RELEVANT FACTS

On April 21, 2020, Brown pleaded guilty without a plea agreement to Count One of the Information charging him with a conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349.  The United States has indicated that it will seek to dismiss Count II after the Defendant is sentenced on Count I.

Brown has pleaded guilty to joining a conspiracy to defraud which operated by obtaining access to corporate email accounts and using that email access to redirect the payments of funds to accounts controlled by the co-conspirators.  In his plea, Brown admitted that in 2018, Brown, Iwuanyanwu and others conspired to use compromised business email accounts of companies with which they were not affiliated to redirect funds sent to and from those companies to bank

accounts they controlled. Other conspirators intercepted emails to and from the victim companies and then sent emails from spoofed email to redirect payments from the victim companies to bank accounts. Brown's role was to register a business and open an account in the name of one of the victim companies in order to receive the fraudulently diverted funds.

Thus, on March 16, 2018, Brown opened a Regions Bank business checking account (the Regions account) in the name of Victim Company 1, an Illinois pipe company. In the account opening documents, Brown listed the entity opening the Regions account as a sole proprietorship and signed as the duly authorized signatory for that entity. To open the Regions Account, Brown also provided a Harris County, Texas certificate of operation for the business, also listed Brown as the sole owner of the business. In fact, Brown had no connection to the Illinois pipe company and did not operate a company in the name of the Illinois pipe company.

Before the Regions account was used to receive the funds intended for the Illinois pipe company, however, Brown used the Regions account to receive funds ($11,335) intended for another victim, an international shipping company based in Dubai. By use of spoofed emails, co-conspirators caused the Dubai shipping company to wire the $11,335 to the Regions Account on May 14, 2019. On May 16, 2018, Brown made a $1,000 cash withdrawal and obtained a $9,600 cashier's check using from the Regions account. The following day, the Dubai company contacted Regions Bank to report that the funds from the May 14, 2018 were obtained by fraud and, on or about May 21, 2018, Regions Bank closed the Regions account.

Meanwhile, the same day, co-conspirators had used spoofed emails to alter an invoice sent to a client of the Illinois pipe company and directing the client, a Russian construction company, to send $884,274 to the Regions account. Thus, when the Russian construction company tried to wire the funds to Brown's Region's account in early July, they were returned.

Thereafter, the co-conspirators sent further sham emails to the Russian client of the Illinois pipe company and re-directed the funds to the account opened by co-conspirators Iwuanyanwu in Massachusetts. The money was sent to this account on or about July 16, 2018. On July 17, 2018, Iwuanyanwu transferred $95,320 from the Bank of America Account to a Citibank, N.A. account in New York held by a Nigerian bank. However, when Bank of America was notified of the fraud, it was able to recall these funds from the Citibank account.

## ARGUMENT

I. THE INTENDED LOSS ATTRIBUTABLE TO BROWN INCLUDES BOTH THE $11,335 AND $888, 274.

The appropriate intended loss figure in this case under the United States Sentencing Guidelines is the entire amount of the sums sought to be sent to Brown's Region account. The intended losses from the conspiracy are thus the total of the $11,335 and the $884,274. Under USSG § 1B1.3(a)(1)(B), the loss for Brown includes the loss from all acts and omissions of others that were in "furtherance of the jointly undertaken criminal activity" and "were reasonably foreseeable" to him. The loss is thus the greater of "'actual loss,' defined as the 'reasonably foreseeable pecuniary harm that resulted from the offense,' and 'intended loss' as the pecuniary harm that was 'intended to result from the offense.' " *United States v. Marti–Lon,* 524 F.3d 295, 301 (1st Cir.2008) (quoting U.S.S.G. § 2B1.1(b)(1) cmt. n. 3(A)(i)-(ii)).

As explained in *United States v. Foley*, 783 F.3d 7, 23 (1st Cir. 2015), "[r]easonably foreseeable pecuniary harm" refers to "pecuniary harm that the defendant knew, or, under the circumstances, reasonably should have known, was a potential result of the offense." *Id.* cmt. n(3)(A)(iv); *see also United States v. Farano,* 749 F.3d 658, 665 (7th Cir.2014) (stressing that "[t]he key word [in this definition] is 'potential,' which means 'could happen' "). Here, Brown

certainly knew that there was potential that these funds would be wired to his account, and only the fact that the account was closed prevented him from receiving those funds.

As the Frist Circuit has noted in the analogous situation of a money laundering conspiracy:

> In a money laundering conspiracy, the amount of laundered funds attributable to a defendant "includes not only that which he handled but also the amount he could reasonably have foreseen would be laundered through the conspiracy." *United States v. Rivera–Rodríguez,* 318 F.3d 268, 273 (1st Cir.2003) (citing U.S.S.G. § 1B1.3(a)(1)). When calculating the amount of loss to determine an offense level for sentencing purposes, a district court "need only make a reasonable estimate of the loss." *Ihenacho,* 716 F.3d at 278 (citing U.S.S.G. § 2B1.1, cmt. n. 3(C)).

*United States v. Adorno-Molina*, 774 F.3d 116, 126 (1st Cir. 2014).

The evidence demonstrates that Brown opened an account in the name of the Illinois pipe company from which the $888, 274 was diverted and that the purpose of opening the account was to receive funds procured by fraud. Only because of the fortuitousness of the fact that the account was closed and the funds were returned to the Russian construction company did Brown not receive the $884,274 into his Region's account. It was the intent of the conspirators that the money be sent to that account. This is demonstrated by the May, 21, 2018 email to the Russian construction company victim directing the company to send the $884,274 to Brown's Region account, and by Brown's opening the Region's account in the name of the Illinois pipe company that was the intended beneficiary of the $884,274. .

Here, the full amount of the fraudulently diverted funds that were directed to Brown's account was thus the potential result of Brown's offense and a reasonable estimate of the loss from his conspiracy offense. Whether or not Brown knew the exact amounts that would get stolen from the victims, the actual amount that was diverted or attempted to be diverted is a reasonable estimate of that the reasonably foreseeable pecuniary harm. Brown either knew how

4

much was being diverted or reasonably should have known these amounts were a potential result of the offense. At a minimum, it is clear that Brown had agreed to accept whatever funds were diverted to the account that he opened in the name of the Illinois pipe company – and that this part of the fraud was within the scope of his agreement with his co-conspirators. *See generally United States v. Sepulveda*, 15 F.3d 1161 (1st Cir. 1993) ("we have emphasized that 'the measure of a defendant's accountability for drug transactions in which he was not personally involved is usually congruent with the scope of his agreement with the other participants in the criminal enterprise." (citation omitted)); *United States v. David*, 940 F.2d 722, 742 (1st Cir. 1991) (explaining that "there is no requirement that a defendant involved in a drug conspiracy must actually have known that a particular shipment was effectuated. As long as the shipment was a foreseeable fruit of the conspiracy and within its scope, the amount of drugs may be attributed to a coconspirator."). In that case, the Court held that the shipment was foreseeable whether or not the defendant actually knew that this shipment was in transit. *Id.* Similarly here, these two transfer of the money were clearly intended, whether or not Brown knew that the exact amount of money arriving and thus were reasonably foreseeable potential harm from his agreement to participate in this conspiracy.

<u>GOVERNMENT'S GUIDELINES CALCULATION</u>

The Government thus calculates the Guidelines as follows:

(1) Defendant's base offense level for the wire fraud conspiracy is 7, because the offense has a statutory maximum term of imprisonment of 20 years or more; USSG § 2B1.1(a);

(2) Defendant's offense level is increased by 14, because the loss (intended gain) from the wire fraud is more than $550,000 but not more than $1,500,000. In accordance with USSG § 2B1.1(b)(I);

(3) Defendant's offense level is increased by 2 because his use of the Texas business certificate to open the Region account was the use of an authentication feature to obtain a means of identification (i.e. the bank account routing number) as part of his offense. USSG § 2B1.1(b)(2)(11); and

(4) Defendant's offense level is decreased by 3 for acceptance of responsibility.  USSG 3E1.1.

Defendant's total offense level therefore is a total of 20.  Because he is criminal history Category II, his guidelines range is 37-46 months.

## CONCLUSION

The United States recommends a sentence of 27 months, two years of supervised release, restitution and forfeiture in the amount of $10,425.95, and a fine within the guideline range of $15,000 to $55,000, unless the Court finds that Defendant is not able, and is not likely to become able, to pay a fine.  The United States is recommending a below-guideline sentence in light of the limited role that Brown played in the overall conspiracy in opening one account to receive funds and because it does not appear that he was involved in the actual planning or implementation of the part of the scheme that involved compromising business emails through hacking and spoofed emails.

    Respectfully submitted,

    ANDREW E. LELLING
    United States Attorney

By:    /s/ *Sara Miron Bloom*
    SARA MIRON BLOOM
    Assistant United States Attorney
    John Joseph Moakley United States Courthouse
    1 Courthouse Way, Suite 9200
    Boston, MA 02210
    (617) 748-3265

Dated: May 15, 2020

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

>/s/ *Sara Miron Bloom*
>Sara Miron Bloom
>Assistant United States Attorney

Date: May 15, 2020